**Maguire Prop., LP, Maguire Prop., Inc. and ABC Corp. No. 1 Through ABC Corp. No. 100.**

**No. 05–3163–CV.**

United States Court of Appeals, Second Circuit.

Dec. 20, 2005.

**ANTHRACITE CAPITAL, INC., Plaintiff–Appellant,**

**v.**

**MAGUIRE PARTNERS—555 WEST 5TH MEZZANINE, LLC, Maguire Partners—808 South Olive Mezzanine, LLC and Robert F. Maguire III Defendants–Appellees.**

William M. O'Connor and Christopher P. Schueller, Buchanan Ingersol PC, New York, NY, for Appellant.

Michael I. Allen and Matthew J. Sava, Shapiro, Forman, Allen, Sava & McPherson LLP, New York, NY, for Appellees.

PRESENT: Hon. WILFRED FEINBERG, Hon. BARRINGTON D. PARKER, and Hon. RICHARD D. CUDAHY,* Circuit Judges.

## SUMMARY ORDER

Anthracite appeals from a final order and judgment of the United States District Court for the Southern District of New York (Cote, *J.*) granting summary judgment to defendants on Anthracite's breach of contract and related claims, denying Anthracite summary judgment, and denying Anthracite's motion to exclude expert testimony. Familiarity with the facts, procedural history and issues on appeal is assumed.

This Court reviews a grant of summary judgment de novo, determining whether the district court properly concluded that there were no genuine issues of material fact and the moving party was entitled to judgment as a matter of law. See *Miller v. Wolpoff & Abramson. L.L.P.*, 321 F.3d 292, 300 (2d Cir.2003).

Under a Mezzanine Loan Agreement dated December 20, 2000 ("Loan Agreement"), MP–555 and MP–808 secured a loan of $61.6 million ("Mezzanine Loan") from Credit Suisse First Boston Mortgage Capital LLC ("CSFB") and German American Capital Corporation ("GACC"), with a pledge of MP–555's and MP–808's membership interests in two wholly owned, single purpose entities, Partners 555 and Partners 808. Between January 1, 2001 and June 1, 2003, Partners 555 and Partners 808 owned the title to the Gas Company Tower, located at 555 West Fifth Street ("Tower"), and a parking garage located at 808 South Olive Street ("Garage") (together, "the Property"), respectively. Anthracite obtained a securitized tranche of the Mezzanine Loan by purchasing the certificates from a trust to which CSFB and GACC had conveyed their ownership interest in the loan.

Section 2.6(k) of the Loan Agreement governs Maguire, MP–555, and MP–808's obligation to pay a Supplemental Mezzanine Component A Exit Fee ("Supplemental Exit Fee"), the subject of Anthracite's breach of contract claims. This section provides that the Supplemental Exit Fee is due "upon one or more sales of all or any portion of the Property by the Companies," provided the sum of the purchase price, any prior purchase price, and the value of the Property after the sale is at least $425,000,000. The Companies are defined in the Loan Agreement as Partners 555 and Partners 808.

Anthracite contends that a change in ownership of the corporate entities that directly and indirectly owned the Property constituted a "sale" that triggered defendants' obligation to pay the Supplemental Exit Fee. A change in ownership occurred during a series of transactions associated with Maguire's strategy of restructuring,

---

* The Honorable Richard D. Cudahy, of the United States Court of Appeals for the Seventh Circuit, sitting by designation.

refinancing debt, and offering stock to the public. As part of the refinancing associated with the Tower and the Garage, Maguire sought new mortgage and mezzanine loans on those properties. Properties 555 and Properties 808 were created to receive title to the Tower and Garage and to be parties to new Bank of America Loans. On June 30, 2003, title to the Tower and title to the Garage were transferred to Properties 555 and Properties 808, respectively.

The defendants do not owe Anthracite a Supplemental Exit Fee since a "sale" did not occur as was required for this obligation to arise under the Loan Agreement. Section 2.6(k) of the Loan Agreement unambiguously provides that payment of the Supplemental Exit Fee is due, as stated earlier, "upon one or more sales of all or any portion of the Property by the Companies." In its thorough opinion, the district court found that a "sale" did not occur, and thus, the defendants' obligation to pay a Supplemental Exit Fee never arose. We agree.

The court below reasoned that although the Loan Agreement does not define the term "sale," the ordinary meaning of that term is "the transfer of property or title for money or other consideration." *Anthracite Capital, Inc. v. MP–555 West Fifth Mezzanine, LLC*, No. 03 Civ. 5219(DLC), 2004 WL 27722, at *2 (S.D.N.Y. Jan.7, 2004). The Loan Agreement also reflects the appropriateness of defining "sale" in this manner. Under Section 2.6(k), payment of a Supplemental Exit Fee is only required when the sum of three calculations is at least $425 million. One of the three calculations is the "Supplemental Exit Fee Purchase Price then due." This amount is defined as "the gross purchase price of all or a portion of the Property, including all cash proceeds, non-cash proceeds, any over-market purchase money

financing *or any other consideration to the Companies or the Borrowers (provided that any and all consideration received shall be payable only to the Companies or the Borrowers* ) that is reasonably attributable to the Property." (emphasis added).

The "consideration" required for a "sale" to have occurred is clearly comprised of the "purchase price" and is that which is "payable" to MP–555, MP–808, Partners 555, or Partners 808. As the district court found, Anthracite has offered insufficient evidence to raise a question of fact that any "consideration" paid in exchange for the transfer of title to the Tower and the Garage was of the type contemplated by Section 2.6(k). In contrast, the defendants have offered undisputed evidence that title to the Tower and Garage was transferred without payment of money or other consideration. Accordingly, Anthracite was properly denied summary judgment.

Anthracite contends that a change in ownership of the corporate entities that directly and indirectly owned the Property constituted a "sale" that would trigger payment of the Supplemental Exit Fee. There is no question that Partners 555 transferred title to the Tower to Properties 555 and that Partners 808 transferred title to the Garage to Properties 808. However, as the district court explained, the Loan Agreement provides that the Supplemental Exit Fee is payable upon a sale of the Property, not a sale of interests in the Property.

Finally, as the district court correctly concluded, because the defendants did not owe a Supplemental Exit Fee, Anthracite's remaining claims are without merit. Also, the district court appropriately dismissed Anthracite's motion to exclude expert testimony as moot.

For the foregoing reasons, the judgment of the district court is hereby AFFIRMED.